IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ex rel. CHERYL S. DIGIOVANNI, ) | |
| ) | |
| Relator, ) | |
| ) | |
| v. ) | CASE NO. CV404-190 |
| ) | |
| ST. JOSEPH'S/CANDLER HEALTH ) | |
| SYSTEM, INC., d/b/a ) | |
| SAINT JOSEPH'S HOSPITAL, INC. ) | |
| and d/b/a CANDLER HOSPITAL, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## O R D E R

Before the Court is Defendant's Motion to Dismiss the Amended Complaint. (Doc. 20.) For the reasons that follow, the Motion is **GRANTED**.

### BACKGROUND

This is a <u>qui</u> <u>tam</u> action brought pursuant to the False Claims Act, 31 U.S.C. § 3729, alleging a pattern of fraudulent Medicare and Medicaid billing. The Relator, Cheryl S. Digiovanni, was employed by Defendant Saint Joseph's/Candler Health System, Inc. (hereinafter "Saint Joseph's/Candler") for thirty-nine years. During her employment, she was responsible for receiving and distributing supplies and was familiar with equipment billing at the hospital. She filed a Complaint under

seal on November 5, 2004 and an Amended Complaint on December 1, 2004.

After an investigation, the Government declined to intervene in this action. Thereafter, the Court entered an Order that the Seal be lifted and that the Complaint be served upon Saint Joseph's/Candler. Following service, Saint Joseph's/Candler filed a pre-answer Motion to Dismiss.

The Complaint alleges that Saint Joseph's/Candler fraudulently created and submitted claims to Medicare that included impermissible charges for supplies and reusable equipment. The scheme alleged in the Complaint specifically pertains to Medicare Part A, which generally covers inpatient care - that is, hospital claims. (Complaint ¶ 8). On March 15, 1999, the Medicare Administrator for all Medicare Part A providers in Georgia issued Medicare Bulletin No. 1836, which states:

> "Reusable equipment and routine services are not covered as separately billable items on claims. The costs for these items and services are to be rolled into the facility fee and are ultimately addressed in the provider's cost report."

(Doc. 3, Ex A.) Under this directive, the following charges were not to be billed as separate items because of their reusable nature: "portable" x-ray services, equipment set-up, and reusable equipment such as pulse oximeters, IV pumps,

monitors, operating room equipment, and other similar equipment. Id.

The Complaint alleges that Saint Joseph's/Candler intentionally disregarded Medicare Bulletin No. 1836 and continued to bill for reusable equipment and routine services:

> Defendant St. Joseph's/Candler Health Systems, Inc. has made it a regular practice prior to and subsequent to the March 15, 1999 Medicare Bulletin No. 1836 to continue to charge and submit claims to Medicare for reusable equipment and routine services as separately billable items on claims. This activity includes [charging for many types of reusable equipment] as separately billable items on individual patients' bills as opposed to being included in the Hospitals' facility fees as required. Such impermissible charges were and continue to be routinely billed to Medicare in violation of Medicare regulations, resulting in additional and improper Medicare reimbursement for Defendant St. Joseph's/Candler Health Systems, Inc. in violation of the False Claims Act.

(Complaint ¶ 14.) The Complaint names various administrators at the hospitals and claims that Saint Joseph's/Candler knowingly presented false claims for payment in violation of the False Claims Act.[1]

---

[1] The Complaint contains three Counts alleging violations of 31 U.S.C. § 3729, subsections (a)(1), (a)(2), and (a)(3). This statute provides:
  (a) Liability for certain acts. Any person who—
    (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
    (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a

3

As an illustration of the alleged scheme, the Amended Complaint contains the following example:

> Without limiting the instances of St. Joseph's/Candler Health System, Inc.'s fraudulent charges, on June 1, 2004, patient number V010945265 was admitted to St. Joseph's Hospital, Inc. (part of the St. Joseph's/Candler Health System), and was at all times relevant hereto a Medicare beneficiary. In violation of 31 U.S.C. § 3729(a)(1), St. Joseph's Hospital billed Medicare for a per diem supply charge in the amount of $648.00. This charge included supplies which were not used by patient number V010945265 and which were reusable by the hospital. . . . St. Joseph's Hospital billed for these impermissible charges and received payment on this patient's bill, including the above described impermissible and illegal charge, in the amount of $5,681.62 on June 29, 2004.

(Amended Complaint ¶ 4-5.)[2]

The Complaint seeks full restitution of all monies expended by Medicare as a result of Defendant's practices and a civil penalty of between five and ten thousand dollars for each violation of 31 U.S.C. § 3729.

---

> false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
> . . .
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person, [subject to various exceptions].

[2] A copy of this patient's bill, reflecting the charges and the Medicare payment, is included in Relator's evidence disclosure filed contemporaneously with the Complaint. (See Doc. 3, Ex. E-1.)

4

Defendant has moved to dismiss the Complaint for failure to state a claim and for failure to plead fraud with particularity, as required by Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. More specifically, Defendant contends that the Complaint fails to identify the materiality of any of the allegedly false or fraudulent statements.

**ANALYSIS**

I. **Rule 12(b)(6) and Rule 9(b)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court presumes the truth of all factual allegations in the plaintiff's complaint. See Crayton v. Callahan, 120 F.3d 1217, 1220 (11th Cir. 1997); see also Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court 'must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.'") (quoting St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am., 795 F.2d 948, 954 (11th Cir. 1986)). The Court must construe the plaintiff's allegations liberally because "[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)(abrogated on other grounds). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

5

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957).

Rule 8 of the Federal Rules of Civil Procedure sets forth the general rules for pleading and provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 9, however, sets forth a heightened pleading requirement for fraud, requiring that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)(quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). This rule, however, does not abrogate the concept of notice pleading, and Rule 9(b) must be read in conjunction with the liberal pleading policy set forth in Rule 8. Ziemba v. Cascade Int'l., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001); Durham, 847 F.2d at 1511.

The particularity requirement applies to actions brought under the False Claims Act. United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1308-09 (11th Cir.

6

2002). "[A] plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Id. at 1310 (quoting Cooper v. Blue Cross and Blue Shield of Fla., Inc., 19 F.3d 562, 567-68 (11th Cir. 1994)). Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances. Corsello v. Lincare, Inc., 428 F.3d 1008, 1013 (11th Cir. 2005). A plaintiff must provide not only the "who," "what," "where," "when," and "how" of improper practices, but also the "who," "what," "where," "when," and "how" of fraudulent submissions to the government. Id. at 1014.

## II. Particularity and Indicia of Reliability

Saint Joseph's/Candler argues that the Complaint fails to meet the heightened pleading requirement of Rule 9(b). Although Saint Joseph's/Candler acknowledges that the Relator has met her burden of particularity regarding the alleged improper practices, it argues that the Complaint is deficient because it does not specifically identify the actual submission of any false claims.

With this argument, Saint Joseph's/Candler distinguishes patient "bills" and other internal billing records from "claims"

that were prepared and submitted to the Government for reimbursement. Although the Relator has set forth detailed allegations that charges for reusable equipment were included in patient bills, Saint Joseph's/Candler contends that she has not provided any explanation, allegation, or factual basis to show that Medicare was actually charged for the specific reusable equipment that was included in these bills. For this reason, Saint Joseph's/Candler argues that the Complaint does not allege or identify any "claims" that were submitted to the government.

As the Eleventh Circuit has explained, "[t]he submission of a claim is . . . the sine qua non of a False Claims Act violation." Clausen, 290 F.3d at 1311. "The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Id.; United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006). "Rule 9(b)'s directive that 'the circumstances constituting fraud or mistake shall be stated with particularity' does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the

8

Government." Clausen, 290 F.3d at 1311 (quoting Rule 9(b)); Atkins, 470 F.3d at 1357.

In response, the Relator contends that she has sufficiently stated a claim under the False Claims Act. She emphasizes that the Complaint alleges, with supporting documentation, that (1) Saint Joseph's/Candler's disregarded the Medicare regulations and (2) Saint Joseph's/Candler had a financial incentive to continue these improper practices.[3] She maintains that these allegations indicate the "who," "what," "when," and "where" of fraudulent billing practices and the scheme as a whole. She also maintains that because she worked for Saint Joseph's/Candler and allegedly possesses firsthand knowledge of the scheme, the particularity requirement should be relaxed and her Complaint should be credited with the necessary indicia of reliability.

The Court finds a recent Eleventh Circuit decision to be instructive: United States ex el. Atkins v. McInteer, 470 F.3d 1350 (11th Cir. 2006). In Atkins, the relator alleged an elaborate medical billing scheme for defrauding the government by submitting false claims. Even though the complaint cited particular patients, dates, and corresponding medical records, the Eleventh Circuit held that the relator had failed to provide

---

[3] Relator has presented internal e-mails from the hospital administration regarding equipment charges. (See e.g., Doc. 3, Ex. B; Doc. 26 at 6.).

9

the next link in the liability chain: "showing that the defendants <u>actually submitted</u> reimbursement claims for the services." <u>Id.</u> at 1359 (emphasis in original). The Eleventh Circuit held that the relator had failed to plead with particularity because he "summarily concluded," without specifically alleging, that the defendants submitted false claims to the government for reimbursement. <u>Id.</u>

But in dismissing the complaint in <u>Atkins</u>, the court also emphasized that the relator did <u>not</u> profess to have firsthand knowledge of the defendants' submission of false claims. Instead, his knowledge was based on "rumors from staff" and "records of shoddy medical and business practices." <u>Id.</u> Because he was "a psychiatrist responsible for the provision of medical care, not a billing and coding administrator responsible for filing and submitting the defendants' claims for reimbursement," the generalized allegations of his complaint lacked the necessary "indicia of reliability." <u>Id.</u> In this way, the court distinguished its decision in <u>Hill v. Morehouse Medical Associates, Inc.</u>, No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) (unpublished), where the court held that a former billing and coding employee of a medical care provider satisfied Rule 9(b) where her complaint claimed that she had firsthand knowledge that her employer submitted false claims.

10

In the instant case, because the Relator claims to have a level of firsthand knowledge, the Court declines to dismiss the entire Complaint solely for failure to plead with particularity. Even though the Complaint does not specifically identify "claims" submitted to the Government, the allegations of improper billing – together with the supporting documentation – strongly imply an allegation that Saint Joseph's/Candler was submitting claims to Medicare for these patient charges. For example, with respect to patient number V010945265, the Complaint alleges that Saint Joseph's/Candler included charges for reusable equipment on the patient's bill and that Medicare reimbursed Saint Joseph's/Candler $5,681.62 for this patient. These allegations, discussed in more depth below, arguably meet the particularity requirement for pleading that Saint Joseph's/Candler was inflating patient bills submitted to Medicare Part A.

However, the Court specifically holds that this is the only scheme that is even arguably pled with particularity. Other than a scheme involving inflated claims for individual patients, the Complaint does not allege any process by which the improper bookkeeping practices translated into false or fraudulent claims that were actually submitted to Medicare. Therefore, any other inferences of impropriety raised by the Complaint are not pled with particularity and are dismissed.

III. **Materiality**

The Court will now consider the Relator's allegations that Saint Joseph's/Candler submitted claims to Medicare for reusable equipment and routine services as separately billable items on individual patient claims. The Court holds that even if these allegations satisfy the particularity requirement, they fail to state a claim because they do not allege a material falsity that could have resulted in a loss to the public fisc.[4]

The False Claims Act subjects to civil liability "[a]ny person who knowingly presents, or causes to be presented, to . . . the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). Civil liability also attaches to "[a]ny person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). A "claim" is defined as a "request or demand . . . for money or property." 31 U.S.C. § 3729(c). The provider must knowingly ask the Government to pay amounts that it does not owe, and there must be actionable damage to the public fisc. Clausen, 290 F.3d at 1311.

There is also a requirement of "materiality" implicit in the False Claims Act. See, e.g., United State ex rel. Gross v. AIDS Research Alliance-Chicago, 415 F.3d 601, 604 (7th Cir.

---

[4] The public fisc refers to the public treasury.

12

2005); <u>United States ex rel. Costner v. URS Consultants, Inc.</u>, 317 F.3d 883 (8th Cir. 2003); <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 785 (4th Cir. 1999).[5] As one district court has explained:

> A natural reading of the term "false or fraudulent claim" is consistent with the implied materiality requirement that the courts have consistently recognized. By requiring a claim that is false or fraudulent, rather than a claim that contains false or fraudulent statements, the FCA implicitly requires statements or conduct that are material to the person's entitlement to the money or property claimed before liability can arise.

<u>United States ex rel. Wilkins v. N. Am. Const. Corp.</u>, 173 F. Supp. 2d 601, 624 (S.D. Tex. 2001). To satisfy the materiality requirement, the Seventh Circuit has required the government (or the relator) to show that the falsity was a "prerequisite to government payment." <u>Gross</u>, 415 F.3d at 604. The Fourth Circuit has imposed a lower standard and based materiality on whether the falsity was "capable of influencing" the payment decision. <u>Harrison</u>, 176 F.3d at 785. Despite this division with respect to the specific standard, the materiality requirement itself is well-established. <u>See</u> e.g., <u>id.</u>

---

[5] Historically, the Government disputed that materiality was an element of liability under the False Claims Act. In a 2003 case, however, the Government conceded that materiality is an element of the cause of action." <u>United States v. Southland Mgmt. Corp.</u>, 326 F.3d 669, 679 (5th Cir. 2003)(Jones, J., concurring).

In the instant case, Defendant contends that the Complaint fails to identify the materiality of the allegedly false claims, because itemized costs on an ordinary inpatient claim do not affect the amount Medicare reimburses a provider. 42 C.F.R. § 412.2(f). Instead, inpatient claims - Medicare Part A - are reimbursed under the Medicare Prospective Payment System (PPS). Under PPS, hospitals are reimbursed based on a pre-determined rate for each Medicare admission. The rate depends on each patient's particular diagnosis and other clinical information. Each patient is classified into a Diagnosis Related Group (DRG) that determines the amount of payment. The DRG payment amounts were derived based on average costs incurred in treating particular conditions. By paying a flat rate based on the patient diagnosis,[6] the PPS system gives providers a financial incentive to provide cost-efficient care. See generally 42 C.F.R. § 412.2(f); Health Care Financing Administration, 65 Fed. Reg. 18434-01 (April 7, 2000); American Hospital Directory, Medicare Prospective Payment System, http://www.ahd.com/pps.html (last visited Nov. 19, 2007).

Because the PPS system pays a standard rate based on the patient diagnosis and the DRG code, the itemized charges on a

---

[6] There are exceptions to the flat rate for patients with exceptionally high costs, but these exceptions are not relevant to the basic subject matter of the Complaint in this case. 42 C.F.R. § 412.2(f).

14

patient's bill are immaterial to the amount of reimbursement a provider receives from Medicare Part A. Accordingly, even if the Relator proves that St. Joseph's/Candler was improperly including charges for reusable equipment in claims submitted to Medicare, this improper submission of claims would have no effect on the amount of reimbursement. The alleged improper practices would therefore not be material, under any standard, to the claims submitted to the government. Further, the improper claims would not result in, or contribute to, any loss to the public fisc.

For this reason, the allegations in the Complaint fail to state a claim that Defendant submitted materially false or fraudulent claims for payment by billing Medicare for reusable equipment.

## CONCLUSION

Accordingly, Defendant's Motion to Dismiss is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 8th day of February, 2008.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA